IN THE UNITED STATES DISRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

THE TOWN OF ANMOORE, WEST VIRGINIA,
A West Virginia Municipality,

    Plaintiff,

v.                                                Civil Action No. 1:21-CV-142
                                                  (JUDGE KEELEY)

SCOTTSDALE INDEMNITY COMPANY,
A Foreign Insurance Company,

    Defendant.

**OMNIBUS MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION [ECF NO. 15] TO COMPEL DISCOVERY RESPONSES FROM DEFENDANT, DENYING AS MOOT DEFENDANT'S MOTION [ECF NO. 22] FOR PROTECTIVE ORDER, AND DENYING PLAINTIFF'S MOTION [ECF 30] TO STRIKE DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

    This action concerns claims brought by The Town of Anmoore, West Virginia ("Plaintiff") against Scottsdale Indemnity Company ("Defendant") for Defendant's denial of certain insurance coverage which Plaintiff sought in the wake of losses sustained from theft of funds by Plaintiff's employees.

    Presently pending before the Court is Plaintiff's motion to compel [ECF No. 15] discovery responses from Defendant and memorandum in support, thereof [ECF No. 16], filed on May 11, 2022. By Order [ECF No. 17] dated May 13, 2022, Hon. Irene M. Keeley, United States District Judge, referred the motion [ECF No. 15] to the undersigned Magistrate Judge for hearing and order as to appropriate disposition. The undersigned conducted a Status Conference, by videoconference, concerning the motion on May 19, 2022, at which appeared Plaintiff's counsel, Chad L. Taylor, and Defendant's counsel, John Michael Prascik. Thereafter, on May 23, 2022, Defendant filed its response [ECF No. 24] to Plaintiff's motion. Finally, on May 31, 2022, Plaintiff

1

filed its brief [ECF No. 32] in support of its motion to compel, which the undersigned construes to be, at least in part, a reply brief; Plaintiff's brief [ECF No. 32] also is presented in opposition to Defendant's motion for a protective order [ECF No. 22], summarized below.

Secondly, pending before the Court is Defendant's motion for a protective order [ECF No. 22] and memorandum in support, thereof [ECF No. 23], filed on May 23, 2022. Defendant's motion [ECF No. 22] is, essentially, an opposition to Plaintiff's motion to compel [ECF No. 15], but is presented as Defendant's own affirmative motion. By Order [ECF No. 26] dated May 26, 2022, Judge Keeley referred Defendant's motion [ECF No. 22] to the undersigned for disposition. By Order [ECF No. 29] dated May 27, 2022, the undersigned set a deadline of June 1, 2022 for Plaintiff to file any response to Defendant's motion [ECF No. 22] which it may choose to submit. Plaintiff did not file a response *per se*, but instead filed the above-noted brief [ECF No. 32] in support of its motion to compel [ECF No. 15], which the undersigned construes to be, at least in part, such a response. Discerning no benefit from having a reply brief *per se* from Defendant, the undersigned did not enter an order inviting the filing of the same. Nonetheless, Defendant filed a reply brief [ECF No. 35] on June 3, 2022.

Third and finally, pending before the Court is Plaintiff's motion [ECF No. 30] to strike Defendant's above-noted motion [ECF No. 22] for a protective order, filed on May 27, 2022. The Court also is in receipt of Plaintiff's memorandum in support [ECF No. 31] of its motion to strike, also filed on May 27, 2022. The Court additionally is in receipt of Defendant's memorandum in opposition [ECF No. 33] to Plaintiff's motion [ECF No. 30], filed on June 1, 2022. By Order [ECF No. 34] dated June 1, 2022, Judge Keeley referred Plaintiff's motion [ECF No. 30] to the undersigned for disposition. Discerning no benefit from having a reply brief from Plaintiff, the undersigned did not enter an order inviting the filing of the same.

As a result of the above-noted Status Conference on May 19, 2022 concerning the first in this series of motions, that being Plaintiff's motion to compel [ECF No. 15], the undersigned ordered Defendant's counsel to produce (1) the claim file and activity log at issue for *in camera* review, and (2) a privilege log for these same materials. Defendant's counsel timely provided the former to chambers staff on May 23, 2022, and timely provided the latter to both chambers staff and opposing counsel on that same date.

The three motions referred to the undersigned [ECF Nos. 15, 22, 30] raise the same or interrelated issues, such that disposition of all of them in this omnibus Order is appropriate.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts here are summarized from the parties' briefing noted above. In the fall of 2018, the West Virginia State Auditor's Office ("Auditor") performed a financial fraud examination of Plaintiff's cash utility records. The Auditor generated a report for the period of September 1, 2011 to October 22, 2013, which evidenced embezzlement by two utility clerks amounting to a deficiency of $145,385.54. Plaintiff had an insurance policy with Defendant, Policy No. PEI0005657, for the period of 2011 to 2012 ("the 2011-2012 policy") and another policy, Policy No. PEI0005812, for the period of 2012-2013 ("the 2012-2013 policy"). These policies contained identical provisions for coverage arising from "employee dishonesty." Plaintiff tendered the loss under its insuring agreements for the period summarized in the Auditor's report. Defendant issued a partial claim denial, and covered losses only under the 2012-2013 policy. Defendant's position was that "one occurrence" took place and therefore there existed only a $50,000 recovery limit. Plaintiff claimed an additional $50,000 payment should be made under the 2011-2012 policy. Defendant disagreed.

In pertinent part, the 2011-2012 policy and the 2012-2013 policy each provided:

>  1. Employee Dishonesty
> 
> We will pay for direct loss or damage to your Business Personal Property, including "money" … resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons with the manifest intent to:
> 
> (1) Cause you to sustain a loss or damage; and
> (2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards. Profit sharing. Pensions or other employee benefits earned in the normal course of employment) for:
> > (a) Any employees; or
> > (b) Any other person or organization intended by the employee to receive that benefit.
> 
> * * *
> 
> The most we will pay for loss or damage in any one occurrence is $50,000 unless a higher limit is shown in the Property Coverage Part Supplemental Declarations.
> 
> All loss or damage is considered one occurrence if it:
> (1) Is caused by one or more persons; or
> (2) Involves a single act or series of related acts.
> 
> We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years the policy remains in force or the number of premiums paid, no limit of insurance cumulates from year to year or period to period.

Ex. A, Def. Mot. Prot. Order at 59 [ECF No. 22-1].

As a result of Defendant's refusal to make the additional payment, Plaintiff filed the Complaint herein [ECF No. 1-2] on November 1, 2021. Plaintiff lodged three causes of action: (1) breach of contract/breach of duty of good faith and fair dealing, (2) insurance bad faith (first party), and (3) vicarious liability (based upon the actions of Defendant's adjuster(s) and/or agent(s)). On the basis of diversity jurisdiction and pursuant to 28 U.S.C. § 1332(a), Defendant removed the action [ECF No. 1] to this Court on December 8, 2021.

Per the Report of the Parties' Planning Meeting [ECF No. 6], filed on January 21, 2022, the parties agreed to a discovery plan and bifurcation. By this plan, the bad faith claim (Count II) would be stayed until resolution of the underlying issue of whether there was insurance coverage

in the first place (Count I). Plaintiff thereafter sought production of the complete insurance claim file and activity log related to the claim, as well as all documents and communications authored by or with the primary insurance adjuster.[1] Defendant objected to the request principally on two grounds: (1) that the requested documents are not relevant to issues currently being litigated regarding the existence of insurance coverage to the extent that Plaintiff sought, because the parties have bifurcated question of coverage from the claim of bad faith, and (2) that it seeks information protected by the work product doctrine and attorney-client privilege. The parties then presented their above-summarized motions to the Court.

## II. REVIEW AND ANALYSIS

In brief, the undersigned finds that the documents which Plaintiff seeks are relevant and should be disclosed. However, the undersigned further finds that portions of the materials are protected by the attorney-client privilege and/or work product doctrine, and that those portions of the materials should not be disclosed to Plaintiff.

**A.      Relevance of the claim file and activity log in light of bifurcation of issues.**

As is well-established, under the Federal Rules of Civil Procedure:

> Parties may obtain discovery regarding any <u>nonprivileged</u> matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

---

[1] During the Status Conference before the undersigned on May 19, 2022, Defendant's counsel helpfully clarified how these materials are kept and organized. Essentially, any responsive materials to Plaintiff's discovery requests are categorized by Defendant into two groupings: (1) the claim file and (2) the insurance carrier's activity log related to the claim. While Plaintiff also sought communications from or with the adjuster, Defendant's counsel explained than any such material necessarily is included within the claim file. Thus, the undersigned analyzes the issues here as to (1) the claim file and (2) the activity log.

Fed. R. Civ. P. 26(b)(1) (emphasis added). Importantly, information need not be admissible to be discoverable. Id.

In the instant matter, the issue is whether the claim file and activity log are relevant under Rule 26(b)(1) such that they should be produced to Plaintiff. Defendant's position is that these materials should not be disclosed, at least not at this stage of the litigation. The issue of whether the underlying insurance policy even afforded coverage for Plaintiff's claims must be resolved, and Defendant argues that nothing about the claim file and activity log has bearing on whether there is coverage under the policy. Defendant argues that the contract provisions here are unambiguous (and in its favor), such that the terms of the contract should be applied instead of construed by the Court. With such an approach, Defendant argues, discovery on the issue is unnecessary and irrelevant. See CME Enterprise, Inc. v. Ken Lowe Management Co., 525 S.E.2d 295, 298 (W. Va. 1999).

Plaintiff correctly points out, though, that the issues of whether the contract terms are ambiguous and if they are, whether they should be construed, are unresolved. Certainly, that is not an issue to be resolved in the discovery phase, at least insofar as it is a dispositive issue to be addressed, first, by the presiding District Judge. At minimum, they are not issues which have been appropriately briefed, nor have the issues been referred to the undersigned.

The threshold issue arising from Count I, alleging breach of contract (breach of duty of good faith and fair dealing), is whether a contract between the parties existed in the first place to afford insurance coverage of the loss as Plaintiff sought. Discovery of the claim file and activity log could very conceivably yield information about the force, effect, and scope of the policy in question.[2] The claim file and activity log, by their nature, would be expected to show how

---

[2] As more fully explained in the following section of this Order, the undersigned has reviewed the claim file and activity log *in camera*. The undersigned is not suggesting here that, by dint of said review, such

6

Defendant viewed Plaintiff's request for coverage vis-à-vis the policy/contract terms and Defendant's own understanding of and practices regarding the terms. If so, then the materials may well yield nonprivileged information about whether there are views or interpretations of the policy terms which could show reasonable disagreement between the parties about the terms, and thus could demonstrate ambiguity of the same. As is well-established in caselaw:

> Extrinsic evidence may be used to aid in the construction of a contract if the matter in controversy is not clearly expressed in the contract, and in such case the intention of the parties is always important and the court may consider parol evidence in connection therewith with regard to conditions and objects relative to the matter involved....

Kelley, Gidley, Blair & Wolfe, Inc. v. City of Parkersburg By & Through Parkersburg Sanitary Bd., 438 S.E.2d 586, 589–90 (W. Va. 1993) (quoting Berkeley Co. Pub. Ser. Dist. v. Vitro Corp., 162 S.E.2d 189, 200 (W. Va. 1968)). Thus, discovery of the materials in question could aid in discerning (or sharpening the parties' arguments about) whether there is, in the first instance, ambiguity in the contract's terms. In other words, any such nonprivileged materials could assist in determining the need for, and scope of, litigation about construal of contract terms. Moreover, in view of the factors set forth in Fed. R. Civ. P. 26(b)(1), the undersigned **FINDS** that the materials at issue, to the extent which they are redacted and not otherwise privileged, are relevant to the breach of contract claim and otherwise proportional to the needs arising from the matter. The undersigned **FINDS** that the materials are important to the issue of whether there was insurance coverage as Plaintiff argues, which is central to the breach of contract claim; that they are easily accessible to Defendant and can be transmitted to Plaintiff simply, such that the burden to Defendant is minor and easily is outweighed by the benefit of providing them; that Plaintiff has no resource to obtain the information otherwise; and that providing them to Plaintiff is appropriate

---

information exists – only that it well could, given what might reasonably be expected to be contained in such materials.

in light of the amount in controversy here. Accordingly, Defendant shall provide to Plaintiff the nonprivileged portions of the claim file and activity log as ordered herein.

### B.   Application of attorney-client privilege and/or work product doctrine.

Defendant resists providing the claim file and activity log entirely, but to the extent which the materials contain materials protected by the attorney-client privilege and work product doctrine. Defendant further objects to providing those portions of the materials. The undersigned agrees that Defendant should not be compelled to produce these portions of the materials.

First, the undersigned recognizes the rule generally shielding work product from disclosure:

> (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

Additionally, in civil actions such as this one where the Court's jurisdiction is based upon the parties' diversity of citizenship, the federal common law governs the applicability of the work product doctrine, while state law governs the applicability of the attorney-client privilege. Nicholas v. Bituminous Cas. Corp., 235 F.R.D. 325, 329 n. 2 (N.D.W. Va. 2006). Turning first to the attorney-client privilege, the Supreme Court of the United States has explained:

> The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) (citation omitted). Moreover, under West Virginia caselaw:

> In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be identified to be confidential.

State ex rel. U.S. Fid. & Guar. Co. v. Canady, 460 S.E.2d 677, 688 (W. Va. 1995) (quoting Syl. Pt. 2, State v. Burton, 254 S.E.2 129 (W. Va. 1979)).

Turning next to the protections afforded by the work product doctrine, the doctrine is of course foundational. "[W]hile the protection of opinion work product is not absolute, only extraordinary circumstances requiring disclosure permit piercing the work product doctrine. We acknowledge that the opinion work product rule should be jealously guarded . . ." In re Doe, 662 F.2d 1073, 1079 (4th Cir. 1981). The Fourth Circuit has explained that there are two kinds of work product: (1) that which is "absolutely" immune, being "the pure work product of an attorney insofar as it involves mental impressions, conclusions, opinions, or legal theories . . . concerning the litigation" and which "is immune to the same extent as an attorney-client communication" and (2) that which is "qualifiedly immune, being "[a]ll other documents and tangible things prepared in anticipation of litigation or for trial may be discovered, but only on a showing of 'substantial need.'" Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992) (quotations and citations omitted). Additionally, "our adversary

9

system depends on the effective assistance of lawyers, fostered by the privacy of communications between lawyer and client and the privacy in development of legal theories, opinions, and strategies for the client." Id. at 983.

Certainly, the undersigned recognizes that, at least as to the attorney-client privilege, and arguably as to the work-product protection, the burden is on the party asserting the privilege or protection to demonstrate applicability of the same. In re Grand Jury Subpoena: Under Seal, 415 F.3d 333, 338-339 (4th Cir. 2005).

As noted above, the undersigned ordered Defendant to produce the materials in question for an *in camera* review. Defendant timely provided the materials, and for ease of review, provided both redacted and unredacted versions. Defendant also provided a corresponding privilege log, by which Defendant gave an explanation for claiming privilege as to each piece of redacted information. Based on the undersigned's *in camera* review of these materials, it is clear that the communications and other materials which Plaintiff seeks are privileged and confidential and should not be ordered to be disclosed. Without revealing specifics, they are communications in anticipation of litigation and/or in aid of it. The communications involve legal counsel as well as Defendant's staff. They include staff's efforts to seek counsel, obtain counsel's review and feedback, and initiate counsel's responses to various matters pertaining to the dispute. They include affirmative communications back from counsel, as well as counsel's deliberations about how to handle the matter. And the bulk of the materials were generated only after Plaintiff's counsel made contact with Defendant, underscoring how the communications were in anticipation of litigation. Based on this *in camera* review, the undersigned **FINDS** that the documents are privileged and confidential and should be protected as such.

  C.  **Defendant's motion for a protective order [ECF No. 22], Plaintiff's motion to strike and to impose sanctions [ECF No. 30], and Plaintiff's assertion that Defendant waived privilege [ECF No. 32].**

The core dispute here began as a rather straightforward question. Yet, for reasons not readily apparent to the Court, matters very quickly and unnecessarily became rancorous, giving rise to two ancillary disputes. The undersigned addresses them collectively here.

First, in a somewhat unusual response to Plaintiff's motion compel [ECF No. 15], Defendant lodged a motion for a protective order [ECF No. 22] to shield from disclosure the materials sought via the motion to compel. In its motion for a protective order, Defendant essentially asserts the same arguments regarding relevance and privilege which the undersigned addresses in more detail above. The undersigned does not re-hash all of that here, but it is not clear why Defendant deemed it necessary to file such an affirmative motion rather than to file a customary response to Plaintiff's motion. Relatedly, Plaintiff filed a motion to strike [ECF No. 30] that motion for a protective order and requested that the Court impose sanctions. In support of its motion, Plaintiff decries Defendant's failure to meet and confer before filing its motion, accusing Defendant of "procedural gamesmanship."

The undersigned wishes not to supply the acrimony here with further oxygen. Such motion practice does not conserve Court resources or aid in efficient resolution of the questions before the Court. Defendant plausibly argues that the "meet and confer" requirement was met prior to Plaintiff filing the first motion [ECF No. 15] in the volley of filings. After all, Defendant's motion essentially addresses the same issues as those in Plaintiff's motion to compel. Perhaps more to the point, nothing about Rule 37 of the Federal Rules of Civil Procedure, which set forth possible sanctions in the discovery context, necessitates an imposition of sanctions in these circumstances. The factors for the Court to consider are well-known. <u>Southern. States Rack & Fixture, Inc. v.</u>

11

Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003) (setting forth facets to consider whether to impose sanctions, those being whether the non-compliant party acted in bad faith, the degree of prejudice caused by the non-compliant party, the need to deter the conduct, and consideration of sanctions that are less drastic). The undersigned discerns no heightened bad faith to deter, no undue prejudice or need to implement measures to deter conduct, or the need to parse through less-drastic sanctions.

Accordingly, the undersigned **FINDS** that Defendant must disclose the materials sought consistent with the findings set forth in more detail, above; that Defendant's motion for a protective order [ECF No. 22] need not be stricken but rather should be denied as moot; that sanctions against Defendant are not appropriate; and that Plaintiff's motion to strike [ECF No. 30] should be denied.

Second, Plaintiff argues that Defendant has waived its ability to protect the materials from disclosure. [ECF No. 32]. To that end, it is contemplated under both the Federal Rules of Civil Procedure and this Court's Local Rules that certain privileged material may be withheld from production to an opponent. However, in so doing, the party withholding the information typically must provide a "privilege log." To this end:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). Additionally, the Court's Local Rules provide, in pertinent part, that:

> The following information shall be provided in an objection [when asserting a claim of privilege], unless divulgence of such information would cause disclosure of the allegedly privileged information:
>
> (1) For documents:

>> (a) the type of document (e.g., letter or memorandum);
>> (b) the general subject matter of the document;
>> (c) the date of the document; and
>> (d) such other information as is sufficient to identify the document for purposes of a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, any other recipients shown in the document and, where not readily apparent, the relationship of the author, addressees and recipients to each other[.]

LR Civ. P. 26.04(a)(2)(B).

Contrary to Plaintiff's suggestion, the Local Rules contain no ironclad provision that privilege is waived for failure to generate a privilege log. That may be an appropriate remedy for egregious behavior, but Defendant's conduct here does not necessitate such a harsh result. Here, Defendant should have provided a privilege log when objecting to discovery requests on the basis of privilege. However, the objection on the basis of privilege appears to be secondary to Defendant's overarching objection to providing any materials at all on the basis of relevance, in light of the bifurcation of issues herein. Perhaps more germane, Defendant generated a privilege log quite promptly when ordered to do so by the undersigned, and the privilege log is well-crafted in terms of its breadth and detail. Nothing about this discovery dispute justifies such a severe result such as finding a waiver of privilege. There is nothing about a finding of waiver which would further any purpose or policy undergirding the Rules of Civil Procedure or this Court's Local Rules. Thus, the undersigned **FINDS** that Defendant did not waive any privilege herein by initially failing to produce a privilege log.

### III. CONCLUSION

Based on the foregoing, and as set forth more particularly herein, it is hereby **ORDERED** that Plaintiff's motion to compel [ECF No. 15] is hereby **GRANTED in part** and **DENIED in part** such that Defendant must disclose to Plaintiff the redacted claim file and activity log as previously

13

provided to the Court. It is **ORDERED** that the information memorialized in Defendant's privilege log is properly shielded from disclosure; however, Defendant is compelled to produce the redacted documents summarized therein. It is further **ORDERED** that Defendant shall provide the same to Plaintiff within three (3) business days of the date of this Order. Based on this conclusion and the findings further herein, it is further **ORDERED** that Defendant's motion for a protective order [ECF No. 22] is hereby **DENIED as moot**. Finally, based on this conclusion and the findings further herein, it is hereby **ORDERED** that Plaintiff's motion to strike [ECF No. 30] is hereby **DENIED**.

It is all so **ORDERED**.

The Clerk of the Court is directed to provide a copy of this Order to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: June 8, 2022**

_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE