IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**THE TOWN OF ANMOORE, WEST VIRGINIA,**

    **Plaintiff,**

                                                  Civil Action No. 1:21CV142
v.                                                 (Judge Keeley)

**SCOTTSDALE INDEMNITY COMPANY,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending before the Court is the defendant's motion for summary judgment on the plaintiff's breach of contract claim (Dkt. No. 40). For the reasons that follow, the Court **GRANTS** the defendant's motion.

## I. Background

For purposes of summary judgment, courts "view the evidence in the light most favorable to the non-moving party" and refrain from "weighing the evidence or making credibility determinations." Lee v. Town of Seaboard, 863 F.3d 323, 327 (4th Cir. 2017) (quoting Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 568-69 (4th Cir. 2015)). Here, the underlying facts of the case are largely undisputed.

In the fall of 2018, pursuant to a fraud examination, the Office of the State Auditor discovered that, between September 1,

**TOWN OF ANMOORE v. SCOTTSDALE INDEM. CO.**                        **1:21CV142**

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

2011, and October 22, 2013, two utility clerks employed by the plaintiff, the Town of Anmoore, West Virginia ("Anmoore"), embezzled at least $145,385.54 (Dkt. No. 1-2 at 18-22). Anmoore subsequently filed a claim for the entire loss under its public entity insurance policy issued by the defendant, Scottsdale Indemnity Company ("Scottsdale"), which included coverage for employee dishonesty (Dkt. No. 40-6). In response, Scottsdale paid the 2012-2013 policy limit of $50,000, less a $250 deductible (Dkt. No. 40-8 at 1).

Anmoore thereafter requested that Scottsdale evaluate whether the embezzlement losses that had occurred during the 2011-2012 policy period also should be covered (Dkt. No. 40-7).[1] Following that evaluation, Scottsdale denied coverage for the 2011-2012 losses after determining that multiple acts of embezzlement constitute one occurrence and policy limits do not cumulate year to year (Dkt. No. 40-8).

After Scottsdale's denial, Anmoore filed this lawsuit alleging (1) breach of contract/breach of the contractual duty of

---

[1] Anmoore had purchased public entity insurance annually from Scottsdale since 2006 (Dkt. Nos. 42-1 to -7).

2

**TOWN OF ANMOORE v. SCOTTSDALE INDEM. CO.**                    **1:21CV142**

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

good faith and fair dealing, (2) insurance bad faith, and (3) vicarious liability for the acts of adjustors and agents (Dkt. No. 1-2 at 1-12). Scottsdale subsequently moved for summary judgment on Anmoore's breach of contract claim (Dkt. No. 40). At the Court's direction, the parties filed simultaneous opening and response briefs (Dkt. Nos. 41, 42, 43, 44).

Scottsdale argues that there is no coverage under its policy for acts committed during 2011-2012 policy period, echoing its previously stated reasons for the denial of coverage (Dkt. Nos. 41, 43). Anmoore contends that Scottsdale's policy is ambiguous regarding coverage for occurrences that span multiple policy years (Dkt. Nos. 42, 44). The parties' arguments raise two related legal issues: (1) whether the insurance coverage at issue constitutes one continuous policy or multiple separate policies; and (2) whether the definition of occurrence in the policies is ambiguous.

## II. Standard of Review

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A dispute is genuine if a reasonable jury could

3

**TOWN OF ANMOORE v. SCOTTSDALE INDEM. CO.**                    **1:21CV142**

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Jacobs, 780 F.3d at 568 (quoting 10A Charles A. Wright et al., Federal Practice & Procedure § 2728 (3d ed. 1998)).

Courts may grant summary judgment where the nonmoving party fails to make a showing sufficient to establish the existence of an essential element of his claim or defense upon which he bears the burden of proof. Celotex v. Catrett, 477 U.S. 317, 323 (1986). The existence of a mere scintilla of evidence supporting the nonmovant's position is insufficient to create a genuine issue; rather, there must be evidence on which a jury could reasonably find for the nonmovant. Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986).

### III. Discussion

Under West Virginia law,[2] the specific wording of an insurance policy determines whether it provides coverage for a particular claim. See Beckley Mech., Inc. v. Erie Ins. Prop. & Cas. Co., 374 F. App'x 381, 383 (4th Cir. 2010); Cherrington v. Erie Ins. Prop.

---

[2] The parties agree that, pursuant to Erie Railroad Company v. Tompkins, 304 U.S. 64, 78 (1938), the substantive law of West Virginia governs the interpretation and application of the insurance policies at issue.

4

**TOWN OF ANMOORE v. SCOTTSDALE INDEM. CO.**  1:21CV142

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

& Cas. Co., 745 S.E.2d 508, 524 (W. Va. 2013). Indeed, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 8, Cherrington, 745 S.E.2d at 511 (internal quotations and citations omitted). Courts should not endeavor to interpret policy provisions unless they are unclear or ambiguous. Id. Instead, courts must give terms and provisions their meaning in the "plain, ordinary[,] and popular sense, not in a strained or philosophical sense." Polan v. Travelers Ins. Co., 192 S.E.2d 481, 484 (W. Va. 1972); see also Syl. Pt. 9, Cherrington, 745 S.E.2d at 511.

**A. One Continuous Policy**

Before addressing whether Anmoore can recover under its insurance policy for acts of embezzlement committed prior to the 2012-2013 policy period, the Court must first determine whether the parties intended Anmoore's public entity insurance policy to be one continuous policy or multiple separate policies. The parties do not specifically argue this point, but Scottsdale frames the policy as one continuous policy (Dkt. No. 41 at 3), while Anmoore posits the policy is in fact one of multiple separate policies (Dkt. No. 42 at 3-3-4).

5

**TOWN OF ANMOORE v. SCOTTSDALE INDEM. CO.**                    1:21CV142

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The question whether the public entity policy is one continuous policy or multiple separate policies appears to be one of first impression under West Virginia law. Couch on Insurance provides helpful guidance on this question, however, stating that "[w]hether the renewal of a policy constitutes a new and independent contract or continuation of the original contract primarily depends upon the intention of the parties as ascertained from the instrument itself." 12 Couch on Ins. § 29:33 (3d ed. 2022); see Auto Club Prop. Cas. Ins. Co. v. Moser, 874 S.E.2d 295 (W. Va. 2022) (favorably citing Couch on Insurance). "A change in policy limits does not preclude a finding that the new policy is a renewal policy, nor does a difference in number, and premium and necessity of a new physical examination, where parties have agreed that the renewal is a continuation." Id. § 29:35.

Here, it is clear from the policy language that the parties intended the public entity insurance policy to be one continuous policy. The declaration page of the 2012-2013 policy form expressly states that it is a renewal of PEI0005657, the policy number on the 2011-2012 policy form (Dkt. No. 40-4 at 6). This pattern continues back to the 2006-2007 policy form where the declaration

6

**TOWN OF ANMOORE v. SCOTTSDALE INDEM. CO.**  1:21CV142

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

page states that the policy is new (Dkt. Nos. 42-1 at 6, 42-2 at 6, 42-3 at 6, 42-4 at 6, 42-5 at 6, 42-6 at 6). Moreover, the employee dishonesty coverage at issue in this case has remained the same since the 2006-2007 policy (Dkt. Nos. 42-1 at 59-60, 42-2 at 59-60, 42-3 at 59-60, 42-4 at 62-63, 42-5 at 59-60, 42-6 at 57-58, 42-7 at 59-60). And Anmoore has not pointed to any language, nor is this Court aware of any, indicating that previous policies were cancelled or terminated.

Anmoore asserts that each policy form lists a different policy number, policy premium, West Virginia insurance surcharge, and policy term (Dkt. No. 42 at 3-4). But "a difference in [policy] number, and premium" "does not preclude a finding that the new policy is a renewal policy . . . where parties have agreed that the renewal is a continuation." 12 Couch on Ins. § 29:35. And despite minor differences year to year, the evidence establishes that the parties intended the policy renewals to be a continuation of Anmoore's employee dishonesty coverage.

Accordingly, there is no genuine dispute of material fact that the public entity insurance policy at issue was one continuous policy.

7

**TOWN OF ANMOORE v. SCOTTSDALE INDEM. CO.** 1:21CV142

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**B. Definition of Occurrence**

The Court must next determine whether the acts of embezzlement that spanned multiple policy periods, but only one policy, constitute more than one occurrence. Scottsdale argues that the definition of occurrence is unambiguous and, thus, the multiple acts of embezzlement at issue here, despite having taken place over multiple policy periods, constitute one occurrence under its insurance policy (Dkt. No. 41 at 6-9).

Anmoore contends that the definition of occurrence is ambiguous because it fails to address occurrences that take place over multiple policy periods (Dkt. No. 42 at 10-15, 43 at 8-10). Consequently, in accord with its reasonable expectations, Anmoore argues that it should be permitted to recover under each policy period, rather than only once under the 2012-2013 policy period (Dkt. No. 42 at 15-17).

Policy language is ambiguous if it "is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Syl. Pt. 1, Prete v. Merchs. Prop. Ins. Co. of Indiana, 223 S.E.2d 441 (W. Va. 1976). But "[t]he mere fact that parties do not agree

8

**TOWN OF ANMOORE v. SCOTTSDALE INDEM. CO.**  1:21CV142

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

to the construction of a contract does not render it ambiguous," Syl. Pt. 4, W. Va. Fire & Cas. Co. v. Stanley, 602 S.E.2d 483 (W. Va. 2004), and "a court should read policy provisions to avoid ambiguities and not torture the language to create them." Payne v. Weston, 466 S.E.2d 161, 166 (W. Va. 1995).

**(1)**

Scottsdale's employee dishonesty coverage provides as follows:

> [Scottsdale] will pay for direct loss of, or damage to your Business Personal Property, including "money" and "securities," resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons with the manifest intent to:
>
> (1) Cause you to sustain a loss or damage; and
>
> (2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:
>
>   (a) Any employees; or
>
>   (b) Any other person or organization intended by the employee to receive that benefit.

9

**TOWN OF ANMOORE v. SCOTTSDALE INDEM. CO.**            **1:21CV142**

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

(Dkt. No. 40-4 at 59).[3] However, "[t]he most [Scottsdale] will pay for loss or damage in any one occurrence is $50,000," and "[a]ll loss or damage is considered one occurrence if it: (1) Is caused by one or more persons; or (2) Involves a single act or series of related acts." Id. at 60.

Under this definition, a "series of related acts" constitutes one occurrence. The plain and ordinary meaning of series is "a number of things or events of the same class coming one after another in spatial or temporal succession."[4] Multiple acts of embezzlement therefore plainly qualify as one occurrence under the policy. Other courts examining similar definitions have reached the same conclusion. See, e.g., Wescott Elec. Co. v. Cincinnati Ins. Co., 310 F. Supp. 3d 521, 527 (E.D. Pa. 2018); Beckley Mech., Inc. v. Erie Ins. Co., No. 5:07-cv-00652, 2009 WL 973358, at *4 (S.D. W. Va. 2009), aff'd, 374 F. App'x 381 (4th Cir. 2010); Glaser v. Hartford Cas. Ins. Co., 364 F. Supp. 2d 529, 537 (D. Md. 2005); Wausau Bus. Ins. Co. v. U.S. Motels Mgmt., Inc., 341 F. Supp. 2d

---

[3] Because the relevant language in all the insurance policies is identical, for ease of reference, the Court will only cite to the 2012-2013 policy form.

[4] Series, Merriam-Webster, https://www.merriam-webster.com/dictionary/series (last visited Aug. 1, 2022).

**TOWN OF ANMOORE v. SCOTTSDALE INDEM. CO.**  1:21CV142

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1180, 1183-84 (D. Col. 2004); see also 12 Couch on Ins. § 172:12 (3d ed. 2022) ("[W]here the liability policy defines 'occurrence' as a series of related incidents, acts, or omissions resulting in injury, there will be a single 'occurrence' even though there have been multiple causative acts if the acts are causally related to each other as well as to the final result.").

**(2)**

Anmoore does not directly dispute this conclusion, but rather argues that the ambiguity in the definition lies in its failure to address occurrences that take place over multiple policy periods (Dkt. No. 42 at 10-15). In this respect, the policy provides that

> [Scottsdale] will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no limit of insurance cumulates from year to year or period to period.

(Dkt. No. 40-4 at 60). Moreover, the policy also provides:

> [Scottsdale] cover[s] loss or damage commencing:
>
> (1) During the policy period which begins with the inception date shown in the Property Coverage Part Supplemental Declarations and ends with the earlier of:

11

**TOWN OF ANMOORE v. SCOTTSDALE INDEM. CO.** 1:21CV142

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

>   (a) The date of cancellation of this policy; or
>
>   (b) The expiration date shown in the Property Coverage Part Supplemental Declarations.

Id. at 75. On the most recent policy form, the policy period is listed as from April 1, 2012, to April 1, 2013. Id. at 6.

Here, the plain and ordinary meaning of the policy language restricts recovery to "acts committed or events occurring during the policy period" (Dkt. No. 40-4 at 60), and under the most recent renewal of the policy that period was from April 1, 2012, to April 1, 2013. Any acts of embezzlement occurring before April 1, 2012, therefore, are not covered under the public entity insurance policy.

Even if the policy did provide coverage for acts committed prior to the 2012-2013 policy period, the policy limit for any one occurrence of employee dishonesty is $50,000, id., and Scottsdale has already paid that amount, less the deductible, to Anmoore. Consequently, because "no limit of insurance cumulates from year to year or period to period," id., Anmoore cannot recover any more from Scottsdale under this policy.

12

**TOWN OF ANMOORE v. SCOTTSDALE INDEM. CO.**                     **1:21CV142**

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In the face of this unambiguous policy language, Anmoore urges this Court to follow the holding in Spartan Iron & Metal Corp. v. Liberty Insurance Corp., 6 F. App'x 176 (4th Cir. 2001), an unpublished opinion in which the Fourth Circuit concluded that policy language similar to the language at issue here was ambiguous. Id. at 178-79. But see Superstition Crushing, LLC v. Travelers Cas. & Sur. Co. of Am., 360 F. App'x 844 (9th Cir. 2009); Madison Materials Co., Inc. v. St. Paul Fire & Marine Ins. Co., 523 F.3d 541 (5th Cir. 2008); Wausau Bus. Inc. Co. v. U.S. Motels Mgmt., Inc., 341 F. Supp. 2d 1180 (D. Co. 2004).

In Spartan Iron & Metal Corp., the Fourth Circuit concluded that the insurance at issue was composed of multiple separate policies, not one continuous policy. 6 F. App'x at 179-81. It based this conclusion in part on a provision in each subsequent policy providing for the cancellation of prior insurance. Id. at 179. Critically, where, as here, the facts establish that the coverage is one continuous policy and not multiple separate policies, the holding in Spartan Iron & Metal Corp. is distinguishable. Also distinguishable are other cases based on similar reasoning. See Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co., 614 F. Supp. 2d

13

**TOWN OF ANMOORE v. SCOTTSDALE INDEM. CO.** 1:21CV142

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

648 (2008) (assuming throughout the existence of multiple separate insurance policies); Glaser v. Hartford Cas. Ins. Co., 364 F. Supp. 2d 529, 537-38 (D. Md. 2005) (finding that the insurance was composed of multiple separate policies).

Furthermore, any argument that the Additional Coverage provision allows Anmoore to recover for acts committed prior to the 2012-2013 policy period is without merit. That provision provides:

> If you (or any predecessor in interest) sustain loss or damage during the period of any prior insurance that you could have recovered under, except that the time within which to discover loss or damage has expired, [Scottsdale] will pay for it under this Additional Coverage provided:
>
> (1) This coverage became effective at the time of cancellation or termination of the prior insurance; and
>
> (2) The claim or damage would have been covered by this Additional Insurance had it been in effect when the acts or events causing the loss or damage were committed or occurred.

(Dkt. No. 40-4 at 60). Such coverage, however, is "part of, not in addition to, the limit of insurance applying to this Additional Coverage," id., and Scottsdale has already paid Anmoore the policy

14

**TOWN OF ANMOORE v. SCOTTSDALE INDEM. CO.**  1:21CV142

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

limit for this occurrence. Consequently, additional coverage is not available by virtue of this provision.

Not only does the policy language at issue unambiguously define multiple acts of embezzlement as one occurrence, it also unambiguously restricts recovery to acts occurring in the policy period and prevents cumulation of policy limits from year to year. Such policy language precludes any need for the Court to consider Anmoore's argument regarding reasonable expectations. Syl. Pt. 2, State ex rel. Universal Underwriters Ins. Co. v. Wilson, 825 S.E.2d 95 (W. Va. 2019). Anmoore therefore is precluded from further recovery under the unambiguous language of its public entity insurance policy with Scottsdale.

**C. Breach of Implied Covenant**

As part of its breach of contract claim, Anmoore also asserted a claim for breach of the contractual duty of good faith and fair dealing (Dkt. No. 1-2 at 1-12). However, "[b]ecause West Virginia does not permit a stand-alone claim for a breach of the covenant of good faith and fair dealing, this claim will live or die by the breach-of-contract claim." Clendenin v. Wells Fargo Bank, N.A., No. 2:09-cv-00557, 2009 WL 4263506, at *5 (S.D. W. Va. Nov. 24,

15

**TOWN OF ANMOORE v. SCOTTSDALE INDEM. CO.**                              **1:21CV142**

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

2009). Accordingly, because Anmoore is not entitled to further recovery under its public entity insurance policy, its claim for breach of the contractual duty of good faith and fair dealing fails.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Scottsdale's motion for summary judgment on Anmoore's breach of contract claim. In light of this ruling, the Court **SCHEDULES** a status conference on **Tuesday, August 16, 2022, at 11:00 A.M.** to discuss the remaining claims in the case. The parties shall connect to the status conference via telephone as follows:

- Call-In: 1-646-828-7666
- Meeting ID: 161 400 6083
- Participant Code: #
- Password: 5781

It is so **ORDERED**.

The Clerk **SHALL** transmit copies of this Order to counsel of record.

DATED: August 9, 2022

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE